LEWIS, *Administrator, Appellant,* v. CARSON *et al.*

1. **Administration**: DEBTS, HOW PAID. Personal property constitutes the primary fund out of which the debts of an estate are to be paid. But in case of a deficiency of personal assets, the real estate must be resorted to, and the heir or devisee takes subject to the payment of the debts.

2. ———: DUTY OF EXECUTOR: INVENTORY. The law makes it the duty of the executor to inventory all the real, as well as personal, property, and he may, under the order of the probate court, lease the real estate, collect the rents, prosecute actions for the recovery of possession, discharge mortgages, and other liens, and deliver the property to those entitled to it, when not needed for the payment of debts.

3. ———: LIABILITY OF ADMINISTRATOR. Although an administrator or executor takes possession of real estate and collects the rents arising therefrom without an order of the probate court, he and the sureties on his bond must account therefor.

4. ———: ———: RESIDUARY LEGATEES. When an administrator and others, as residuary legatees, sell, as individuals, their interest in land, and the administrator receives the money arising from the sale and applies it in his official capacity, he and his sureties are accountable for its proper application, although it was not raised by virtue of his office as administrator.

5. ———: PAYMENT OF DEBTS. It is the duty of an administrator to reserve sufficient money to pay the debts of the estate, before making payments to residuary legatees.

*Appeal from St. Louis Court of Appeals.*

REVERSED AND REMANDED.

*Leonard Wilcox* and *Broadhead & Haeussler* for appellant.

(1) The Webb purchase money was assets of the estate for which the sureties are liable. *Dix v. Morris,* 1 Mo. App. 95; s. c., 66 Mo. 518; *Campbell v. Johnson,*

65 Mo. 439 ; *Boyer v. Allen*, 76 Mo. 498 ; 3 Jarman on Wills [5 Am. Ed.] 427. (2) If the Webb purchase money was not assets of the estate, then the administrator has improperly received credit for $7,316.65, paid on account of the land sold to Webb, and to clear title to same. (3) The administrator improperly used $5,140 of the money of the estate to pay off mortgage debts on property which had been devised to him and his sister. 3 Jarman on Wills [5 Am. Ed.] 474, 477 ; 3 Williams on Admr's [6 Am. Ed.] 1801, 1803 ; R. S., 1879, secs. 138, 149, 201, 230 ; *Lake v. Meier*, 42 Mo. 389 ; *Ross v. Julian*, 70 Mo. 209 ; *Evans v. Snyder*, 64 Mo. 516 ; *Greene v. Holt*, 76 Mo. 678 ; *Cape Girardeau v. Harbison*, 58 Mo. 90 ; *Church v. McIlhinney*, 61 Mo. 542 ; *Burdyne v. Mackey*, 7 Mo. 375. (4) The administrator paid out $19,854 to special legatees and residuary legatees and devisees, which should be disallowed as a credit in this proceeding. R. S., 1879, secs. 243, 245, 3967 ; *North v. Priest*, 81 Mo. 561. (5) The administrator should not be allowed credit for the sum of $2,109, used to pay taxes on the real estate devised to him and his sister. *Wilcox v. Smith*, 26 Barb. 337 ; *McIlhinney v. Church*, 61 Mo. 543 ; *Gray v. Clement*, 12 Mo. App. 579 ; *Burdyne v. Mackey*, 7 Mo. 374, 375. (6) The sum of $1,363.52, used by the administrator to pay special tax bills on the real estate devised to him and his sister, should be disallowed as a credit. *In re Motier's Estate*, 7 Mo. App. 514, 518 ; *Higgins v. Ausmus*, 77 Mo. 351. (7) The administrator had no authority to use the funds of the estate to repair or insure the real estate, and those credits should be disallowed. *In re Motier's Estate*, 7 Mo. App. 518 ; *Byrd v. Governor*, 2 Mo. 102 ; *Ritchie v. Withers*, 72 Mo. 559. (8) Not having brought the assets of the firm of J. B. Carson & Brother into the administration, he was not entitled to credit for demands against that estate, especially as they were never presented or allowed. R. S., 1879, secs. 201,

230. (9) The burden of proof was upon the defendants to show that inventoried assets were uncollectible or worthless. *Julian v. Abbott*, 73 Mo. 580; *In re Haffey's Estate*, 10 Mo. App. 232; *Folger v. Heidel*, 60 Mo. 288; *Williams v. Petticrew*, 62 Mo. 471. (10) The administrator *de bonis non* is the proper person to recover the assets. The creditor could not sue the former administrator or his bondsmen. *State ex rel. v. Heinrichs*, 82 Mo. 550.

*E. T. Farish* and *Given Campbell* for respondents.

The proceeds of the sale of the real estate with which the administrator charges himself do not constitute assets. The rents collected by him are strictly in the same category, since he is liable to the devisees for these rents. *Ferguson v. Carson*, 13 Mo. App. 29; *Gamage v. Bushel*, 1 Mo. App. 418; *Rodman v. Rodman*, 54 Mo. 444; *Hawkins v. Kimball*, 57 Ind. 42; *Terry v. Ferguson*, 8 Porter, 500; *Goodrich v. Thompson*, 4 Day, 215; *Griffith v. Becker*, 10 Barb. 432; *Stone v. Zimmermann*, 21 Porter, 394.

BLACK, J.—This is a statutory proceeding, commenced in the probate court against a removed administrator and his surety to ascertain the amount of money and property in his hands. The probate court gave judgment for the plaintiff for the sum of $8,752.53. A like judgment was rendered in the circuit court, on an appeal prosecuted by the defendants. That judgment was reversed in the court of appeals and the plaintiff appealed.

John B. Carson died in 1866. By his will, he gave to two step-daughters twenty-five hundred dollars each, and to a nephew one thousand dollars. The residue of his property, real and personal, he devised and bequeathed to his brother, James O. Carson, and his sister, Mrs. Postlewait. Ferguson, the nominated exec-

utor, declined to act, and letters of administration with the will annexed were granted to James O. Carson, one of the residuary devisees. He made two settlements, one in 1868, and the other in 1869. The last was a final settlement, and at which time the administrator was, by the probate court, discharged. Ten years later, and at the suit of Mr. Glover, who then held a debt due from the estate to Mr. Ferguson, the final settlement was set aside, in order that that demand might be allowed and classed. In 1883, the letters of administration to Carson were revoked for failure to give a new bond, as previously ordered by the probate court, and the plaintiff, public administrator, took charge of the estate.

The Ferguson demand, held by Glover, arose as follows : At the death of John B. Carson there was a suit pending against him by Ober and others, which was revived against the administrator. The suit was prosecuted through the state courts, and by the administrator appealed to the Supreme Court of the United States, resulting in a final judgment for Ober and others. Ferguson, who was a surety on the appeal bond, paid a balance due on the judgment and took an assignment of it to Mr. Glover, in whose name it was allowed by the probate court on the twenty-first of March, 1879, in the sum of $5,114.92. This is the only unpaid debt of the Carson estate, and is held by Ferguson, who is a surety on the administrator's bond, and he is a defendant in this proceeding.

The deceased left a large personal and real estate. James O. Carson had administered on all the personal property of any value at the date of his second settlement, and, as we understand the record, the devisees have sold all the real estate. By the two settlements, the late administrator stands charged with over thirty thousand dollars, and is credited with a larger amount, so that there appears from them to be due to him $5,636.12. The deceased owned three-fourths of two

and one-half acres of land on Grand avenue, in St. Louis, which was incumbered by a mortgage. James O. Carson, the administrator, purchased the other one-fourth, paid off the incumbrance, and he and his sister, the residuary devisees, then sold the whole of that parcel for $17,750. The sale was not made under any power in the will, nor by order of the probate court, still the administrator charged himself in his second settlement with the proceeds. Among other items he is credited with the following amounts : Fifty-seven hundred dollars paid for the one-fourth interest in the two and one-half acres and the incumbrance thereon ; six thousand dollars paid the special legatees ; and fifty-nine hundred dollars paid to Mrs. Postlewait, and seventy-five hundred dollars paid to himself, as residuary legatees. There are other credits for taxes paid on real estate, and the discharge of a mortgage on another parcel of land.

The principal question is, whether the removed administrator must stand charged in this suit with the $17,750 proceeds of the two and one-half acres, and the next relates to the matters of credit. That the personal property constitutes the primary fund out of which the debts are to be paid is well settled. The principle runs through the whole administration law. But in case of a deficiency of personal assets, the real estate must be resorted to, and the heir or devisee takes subject to the payment of the debts. The law makes it the duty of the executor to inventory all the real as well as the personal property. Under the order of the probate court he may lease the real estate, collect the rents, prosecute actions for the recovery of possession, discharge mortgages and other liens, and deliver the property to those entitled thereto when not needed for the payment of debts. R. S., secs. 70, 129, 143, 130. Although the administrator or executor takes possession of real estate and collects the rents arising therefrom without an order of the pro-

bate court, he and his sureties on his bond must account therefor. This is no longer a debatable question in this state. *Gamble v. Gibson*, 59 Mo. 592; *Dix v. Morris*, 66 Mo. 514. In the previous case of *State to use v. Scholl*, 47 Mo. 84, the administratrix, without any order of the probate court, sold a leasehold, the fixtures, and good will of a saloon, and left the state without accounting for the proceeds, and it was held that, as she assumed control of the property, her unlawful acts could not be interposed to shield the sureties, and they were required to make good the loss to the estate.

Now in this case, the administrator took control of all of the real estate and collected the rents. The will provides that the three special legacies shall be paid as soon as practicable by the executor, and if necessary, he is authorized to sell real estate to pay the same. The administrator did not sell under this power as he might have done, nor did he procure an order of the court, but he and his sister, who were the residuary legatees and devisees, made the deed in their individual names, and then the administrator carried the proceeds into his accounts as administrator. This constituted in part the fund from which the mortgages and special legacies were paid. It must be taken that the purpose was to create a fund to be thus used by the administrator, for nothing to the contrary appears. If heirs of a deceased person were to raise money and place it in the hands of the administrator in order to pay debts of the estate, and thereby save a resort to the real estate, we cannot see why the administrator and his sureties would not be answerable for the proper application of the money. Although the money was not raised by virtue of his office as administrator, still the administrator received and applied it in his official capacity. He disregarded his duty in not settling under the will or by order of the court, but he received the proceeds and disbursed them under color of his office. Under the principle of the cases

before cited and that of *State to use v. Purdy*, 67 Mo. 94, we hold that the administrator and his sureties are accountable for the proper application of the proceeds of the sale of the two and one-half acres. It is immaterial whether he is charged with the whole of the proceeds and credited with the amount paid for the one-fourth, or charged simply with the net proceeds; the result is the same.

That it was the duty of the administrator to reserve enough money to pay the debts before making payments to the residuary devisees is clear. We do not understand the proposition to be denied. These payments to James O. Carson and Mrs. Postlewait, and the commissions on them, must be excluded from the credits. The administrator appears to have paid four hundred dollars on account of his own notes given in payment of interest on an incumbrance on the Locust street property. This was done when he would have had money in his hands to pay the principal but for the wrongful payments to himself and the other residuary legatees. This item must also be excluded. The result of this is that the late administrator stands chargeable with an amount equal to that found by the circuit court, from which no appeal was taken by the plaintiff. It is, therefore, unnecessary to examine the other disputed items of the accounts. While this result is reached upon different grounds from those taken by the probate and circuit court, still the facts are not disputed and there is no need of a new trial.

The judgment of the court of appeals is reversed and the cause remanded to that court with directions to affirm the judgment of the circuit court. All concur.

*On rehearing.*

BLACK, J.—By the opinion heretofore filed, the late administrator, James O. Carson, stands charged with the

proceeds of the two and one-half acres of land, as he had ·charged himself. The credits for amounts paid for the one-fourth interest therein, and in discharge of the mortgage thereon, are not disturbed. He is not deprived of any credit for moneys paid to the special legatees, so that a discussion of his right thereto is not required to a disposition of this case. These accounts are of long standing, and it was deemed proper to interfere with them so far only as the demands of creditors of the estate required. There was, it is true, other real estate belonging to the estate of John B. Carson. The record does not show when that property was sold by the devisees, but it seems to be conceded that it was sold after the administration had been closed in the probate court, and before the commencement of the suit to set aside that final settlement. However that may be, it is manifest we cannot undertake to adjust the rights, whatever they may be, between those purchasers and the surety on the bond of the late administrator in this suit, to which the purchasers are not parties. It is not intimated that they should or could have been made parties to this proceeding.

As to creditors, James O. Carson had no right to make the payments to himself, or his sister. The same is true as to the four hundred dollars. We can come to no other conclusion than that heretofore expressed.

The opinion heretofore filed, with some immaterial erasures, will stand as the judgment of the court. All concur.