McPike v. McPike.

McPike, *Administrator*, v. McPike, *Plaintiff in Error.*

Division Two, July 1, 1892.

1. **Practice**: REFEREE'S REPORT: JUDICIAL DISCRETION. It is no abuse of the trial court's discretion to refuse to strike out exceptions to a referee's report because the exceptions were filed one day after the time limited therefor by an order of the court.

2. **Administrator**: FINAL SETTLEMENT: CREDITS. An administrator is entitled on his final settlement to credit for money paid by him for the clothes and schooling of the intestate's daughter, where such payments were made during the intestate's lifetime, and were not intended as a gift, and where the claim therefor though not formally allowed in the probate court was included in a settlement approved by that court.

3. ———: ———: ESTOPPEL. The fact, that an administrator has charged himself in his annual settlement with a fund which he did not receive in his capacity as administrator, will not estop him from correcting the charge on his final settlement.

4. ———: LAWS, EXTRA TERRITORIAL FORCE OF. An administrator derives his authority to administer the assets of his intestate from the laws of the state in which he is appointed, and those laws have no extra territorial force.

5. ———: ———: PRESUMPTION. Where the laws of the state of Illinois are not introduced in evidence it will be presumed that the common law is in force there.

6. ———: FINAL SETTLEMENT: RENTS. In those states where the administration of the estate of a decedent is conducted according to the course of the common law, an administrator, who receives rents of real estate or the proceeds of its sale, is chargeable therefor individually as a trustee or trespasser, and not in his character as administrator.

7. ———: ———: ———. Where, however, under the statute the collection of rents and proceeds of sale of realty are within the scope of his duties as administrator, and he receives them by color of his office, he and his sureties are responsible therefor.

8. ———: ———: RENTS FROM LAND IN ANOTHER STATE. A Missouri administrator is not chargeable as administrator for rents collected by him from land of the intestate in Illinois, where such rents accrued after the intestate's death, in the absence of any proof that the laws of Illinois gave him authority to collect such rents.

9. ——: ——: PAYMENT OF DEBT IN ANOTHER STATE. An administrator is, however, chargeable as such with money collected by him in payment of a debt due the decedent, even though such payment was made in a foreign state.

10. ——: ——. Where land of the decedent is left in the possession of the heirs, and the administrator with their consent pastures his mules on such land, he is not chargeable as administrator with the value of the pasturage.

11. ——: INTEREST. An administrator is not entitled to interest on money advanced by him for the use of the estate.

*Error to Ralls Circuit Court.*—HON. W. W. EDWARDS, Judge.

REVERSED.

*R. F. Roy* and *David Goldsmith* for plaintiff in error.

(1) This action is in effect one against the sureties on the administration bond, and no charge, for which they are not liable, can be herein made against the administrator. *Dix v. Morris*, 66 Mo. 514; *State v. Richardson*, 82 Mo. 509; *Lewis v. Carson*, 93 Mo. 591. (2) The findings of the referee are reviewable as in chancery cases. *In re Est. of Meeker*, 45 Mo. App. 186. (3) The administrator is not chargeable for the rent of the Alton mills accruing after the death of Mr. Abraham McPike, nor for the proceeds of the sale of that property in partition; such rents and proceeds of sale are not assets of the decedent in this state, and the administration thereof is not covered by the administrator's bond. *Cabanne v. Skinker*, 56 Mo. 357; *Morrill v. Morrill*, 1 Allen, 132; *Smith v. Smith*, 13 Ala. 329; *Smith v. Wiley*, 22 Ala. 396; *Peck v. Mead*, 2 Wend. 470; *State ex rel. v. Osborn*, 71 Mo. 86; *Sheldon v. Rice*, 30 Mich. 296. (4) The rule as to foreign personalty is different in the various jurisdictions, owing to the diversity of

opinion as to whether, or in how far, such personalty constitutes an asset for the purposes of administration at the place of domicile. 1 Woerner on Administration, p. 362, *et seq.;* Vol. 2, p. 648; Williams on Executors [Perkins' Am. Notes] pp. 1759–1761; Story on Conflict of Laws [8 Ed.] sec. 514a, *et seq.* (5) But the following authorities deny the liability of an administrator's sureties for foreign personalty. *Mothland v. Wireman,* 3 Pa. (3 Pen. & W.) 185; *Governor v. Williams,* 3 Ired. L. 154; 1 Woerner on Administration, sec. 166, p. 374; Story on Conflict of Laws [8 Ed.] pp. 727, 728. (6) The common law, free from statutory amendment, is presumed to prevail in Illinois, there being no proof of what the law there actually is. *Long v. Long,* 79 Mo. 651; *Meyer v. McCabe,* 73 Mo. 236. (7) And if, as must thus be presumed, the common law exists in Illinois, an administrator appointed there would not be liable for rents collected by him, if they accrued after the death of his intestate; and, therefore, an administrator appointed here could not be liable in his official capacity for such collections of rent in Illinois. *Young v. People,* 35 Ill. App. 363; *Newcomb v. Stebbins,* 9 Met. (Mass.) 540; *Hutcherson v. Pigg,* 8 Gratt. (Va.) 220; *Wilson v. Unselt's Adm'r,* 12 Bush (Ky.) 215; *Head v. Sutton,* 31 Kan. 616; *Belcher v. Branch,* 11 R. I. 226; *Walker's Appeal,* 116 Pa. St. 419. (8) The same would be true in regard to the collection of the proceeds of the sale of the realty in partition; the administrator could not possibly have collected such proceeds in his official capacity, if the common law prevailed in Illinois. See, in addition to authorities last cited, Freeman on Partition [2 Ed.] sec. 471, p. 627; *Foster v. Newton,* 46 Miss. (4 Morr.) 663. (9) The decisions in this state are not inconsistent with these authorities, since they are predicated on the statutory duties and rights

of administrators. *Lewis v. Carson*, 93 Mo. 591, 592. (10) Under the decisions in Illinois an administrator would not in fact be thus liable. *Young v. People*, 35 Ill. App. 363; *Stark v. Brown*, 101 Ill. 395; *Lemoyne v. Quimby*, 70 Ill. 403. (11) The charges against the administrator for the pasturage and feed of mules are unwarranted. These charges are not for the rent or rental value of the land, and no charge against him for rent or rental value would have been warranted by the evidence. (12) The administrator is entitled to interest on his outlays in excess of receipts. He is entitled to subrogation to the rights of the creditors whose claims he has paid, and they carried interest. Randolph on Commercial Paper, secs. 901, 982; *Bank v. Hunter*, 4 Bosw. 646; *Kinney v. Harvey*, 2 Leigh (Va.) 70; *Gaw v. Huffman*, 12 Grat. 628; Sheldon on Subrogation, sec. 202; *Woods v. Ridley*, 27 Miss. 119; *Smith v. Hoskins*, 7 J. J. Marsh. (Ky.) 502. (13) Even on advancements to the heirs the administrator was entitled to interest, so long as the rights of creditors were not prejudiced. Woerner on Administration, secs. 521, 523. (14) The exceptions filed by the administrator *de bonis non* were invalid because filed out of time, and all the charges against the administrator predicated thereon are, therefore, erroneous. Revised Statutes, 1879, sec. 3622; *Welch v. St. Louis*, 73 Mo. 73; *Moran v. January*, 52 Mo. 523; *Dale v. Patterson*, 63 Mo. 98; *State v. Duckworth*, 68 Mo. 156; *Wright v. Sheur*, 55 Mo. 70; *State v. Hill*, 98 Mo. 570. (15) The disallowance by the circuit court of the item of $1,246.60, for payments made to Miss Ella McPike, is illegal, because no exception was taken to the allowance thereof by the referee. (16) The charge of interest against the administrator on specific items of the account is unwarranted both in law and fact.

*J. P. Wood* and *Harrison & Mahan* for defendant in error.

(1) The administrator was properly chargeable with the rents, proceeds of sale and items of account of the Alton mills. He collected and had the money in his hands in his official capacity. The money belonged to the estate of A. McPike, and the administrator should be made to account for it as assets of that estate. *Peppler v. Scholl*, 47 Mo. 84; *Betts v. Purdy*, 67 Mo. 94; *Tyler v. Priest*, 31 Mo. App. 285; *Gamble v. Gibson*, 59 Mo. 594; *Scudder v. Ames*, 89 Mo. 496; *Lewis v. Carson*, 93 Mo. 591; Schouler's Executors & Administrators, secs. 175, 176. (2) Henry McPike, the administrator, controlled the lands of the estate for his own individual use and benefit. On the product thereof he fed and pastured his mules. He used the lands as if rented, and he is responsible to the estate for the benefits which he derived from such use. The charge was warranted, and should be allowed. It was abundantly supported by the testimony. Woerner on Administration, sec. 307; *Smiley v. Smiley*, 80 Mo. 44; *Lewis v. Carson*, 16 Mo. App. 342; *Dix v. Morris*, 66 Mo. 518; *Tyler v. Priest*, 31 Mo. App. 284; *Wolff v. Berning*, 74 Mo. 87; *Whaley v. Whaley*, 51 Mo. 37; *Kimball v. Sumner*, 62 Me. 309; *Wilson v. Shearer*, 9 Metc. 508. (3) The record does not show that the administrator was entitled to interest on his outlays in excess of receipts. He had assets which he could have converted into money, and the funds of the estate were at all times sufficient to meet the demands against the estate. Under such circumstances interest cannot be charged. *Booker v. Armstrong*, 93 Mo. 49; *Evarts v. Nanson*, 11 Vt. 122; *Billingsley v. Henry*, 20 Md. 282; Woerner on Administration, sec. 523. (4) The trial judge did not commit error in reviewing the report of the referee;

he had the right to review the same, regardless of exceptions; hence, the exceptions filed by the administrator *de bonis non* were properly considered. Besides the court found "that the short delay in filing the exceptions was satisfactorily explained,—and also in view of the fact that the parties had by agreement made a law for themselves as to the time of filing the exceptions, which law ought to be liberally construed, and with reference to the real intention of the parties." *Smith v. Paris*, 70 Mo. 621. (5) The circuit court was authorized by the evidence to disallow the item of $1,246.60 for payments made to Miss Ella McPike, because all of such payments were made before the death of her father, and, therefore, it could not be allowed as an advancement to the heir, and the trial court found that there was not sufficient evidence to "authorize its allowance as a credit paid before the death of the intestate." The circuit court had the right to review the finding of the referee and make the amendment in this behalf. *Walker v. Hurlstone*, 92 Mo. 332; *Hardware Co. v. Wolter*, 91 Mo. 488; *Smith v. Paris*, 70 Mo. 621.

GANTT, P. J.—Abraham McPike died in January, 1873. Henry C. McPike was duly appointed administrator of his estate by the probate court of Ralls county, Missouri.

This is an appeal from the judgment of the circuit court of Ralls county, on his final settlement of said estate with Jeremiah McPike, who was appointed administrator *de bonis non*. On his final settlement in the probate court, the administrator claimed a balance due him from the estate of $5,079, and there was an approval of this settlement. From this judgment the administrator *de bonis non* appealed to the circuit court of Ralls county. The circuit court referred the

cause to Thos. H. Bacon, Esq., with instructions to take the testimony, hear and determine the matters in dispute and make full report to said circuit court in writing of all the testimony, together with his findings and decisions on the issues of the case.

The referee heard the cause, and the evidence was closed the ninth of March, 1886, when the further hearing was continued to June 22, 1886. At this last date the administrator, Henry C. McPike, filed his motion to strike out of his account certain charges he had made against himself for rents and the proceeds of sale in partition of certain real estate belonging to his intestate in Alton, in the state of Illinois, amounting to $13,990. This motion the referee overruled.

The referee made his report to the circuit court of Ralls county on the sixth of December, 1886, finding a balance due the estate from H. C. McPike of $8,425.70. Both sides filed exceptions to this report.

The referee, Thos. H. Bacon, Esq., having been elected judge of the circuit court, by mutual consent, he called Judge W. W. EDWARDS, of the St. Charles circuit court, to hear the exceptions to his report. Judge EDWARDS heard the cause, and rendered judgment for the estate against the administrator, H. C. McPike, for $23,858.78.

I. The first question which arises upon the rulings of the circuit court is the propriety of overruling the administrator's motion to strike out the objections of the administrator *de bonis non* to the referee's report.

The circuit court gave each side leave to file exceptions on or before February 1, 1887. The administrator *de bonis non* filed his exceptions on February 2, 1887. The extension of time was a matter within the discretion of the trial judge, and this motion was properly overruled.

II.   In his final settlement the administrator claimed a credit for $1,246.60, credited July 14, 1873, for the schooling, clothing and moneys laid out for his intestate, in his lifetime, in the education of Ella McPike, now Mrs. Moore.   The referee heard this evidence, and allowed this credit.   This account was presented in the probate court for allowance.   James W. Lear appears to have been appointed administrator *ad litem*, and waived notice on it.   It was sworn to by Ella McPike as correct at .the time, but no formal allowance was made on the record.   On the hearing before the referee it appears that Miss Ella made a trip to California in 1872, with the administrator and his family.   She testifies he paid her expenses, her dressmakers' bills in St. Louis; that he paid her school accounts at Monticello, furnished her money, etc.   The administrator testified that for five years before her father's death he attended to placing her in school and paying her bills; that he paid the amount of the voucher "C" for her father.   No exception was filed to the referee's report allowing this credit, but the circuit court disallowed it.   The learned judge simply says that the evidence does not seem to justify the credit.   This credit was allowed by the probate court in the annual settlement.   It was again allowed by the referee.   The evidence is uncontradicted that the administrator paid this money out for his niece in the lifetime of her father.   She testifies that her father did not mean to accept it as a gift; that he was amply able to support her.   The law would certainly cast on the father the reasonable education of his daughter.

We have been unable to view this charge with any suspicion.   The beneficiary of this estate testifies she received the consideration.   At the.time this disbursement was first allowed, section 230 of Revised Statutes, 1879, was in force in this state.   By that section it was

not absolutely essential for the administrator to obtain a credit that it should have been allowed according to law, but he might "produce such proof of the demand as would enable the claimant to recover in a suit at law." Had the probate court refused to allow him this credit at that time, he could have made his formal proof for his allowance. It seems to us that the subsequent approval of the settlement with this credit was tantamount to an allowance, and the evidence before the referee not only did not overturn it, but tended to strengthen it.

We think the court erred in setting aside this allowance. To drive this administrator into a court to obtain a judgment now after the statute of limitations has run would work an injustice.

III. In his final settlement, the administrator charged himself with the following items:

| | |
|---|---:|
| January 17, 1874—cash of S. W. Farber & Co., rent of mill....$ | 750 00 |
| December 29, 1874—S. W. Farber & Co., mill rent............. | 750 00 |
| April 20, 1875—Farber & Co., mill........................... | 2,920 00 |
| May 8, 1875—mill rent ...................................... | 750 00 |
| January 1, 1877—rent Alton mill............................. | 750 00 |
| December 31, 1877—Farber mill rent......................... | 750 00 |
| December, 1878—Farber mill rent........................... | 750 00 |
| May, 1880—one-fourth Alton mill............................ | 6,570 00 |
| | $13,990 00 |

He moved the referee to strike these charges from his account. The referee declined to do so, and the circuit court sustained the referee. That this mill was real estate in the state of Illinois seems unquestioned. No administration on it was had in that state. The testimony is that in a partition proceeding in Illinois the mill was sold by a commissioner, and the proceeds of the sale divided among the owners, Abraham McPike's heirs; one-fourth was paid to Henry C. McPike.

The administrator *de bonis non* claims that, inasmuch as the administrator on his own showing received this money belonging to the heirs, he is chargeable with it.   The administrator on the other hand says that he did receive it, *but not as administrator;* that his bondsmen ought not to be charged with this money, which never was assets in this state.

That the courts have the right, upon final settlement being made, to examine the prior settlements, and rectify all errors or mistakes that have been made by or against administrators, is now settled in this state. 2 Woerner's American Law of Administration, secs. 504, 539; *In re Davis, Ex'r,* 62 Mo. 453.

The mere fact that an administrator has charged himself in an annual settlement with a fund that he has received as trustee, or attorney in fact, for the heirs, and not by virtue of his official character, and to which he would and could have no legal right, as administrator, will not estop him from asking to strike the same from his accounts on final settlement, nor prevent the probate court allowing him to do so.   2 Woerner's American Law of Administration, sec. 513, note 6, and cases cited.

It becomes a question of great importance not only to the administrator and his sureties and the heirs of this estate, but to administrators and beneficiaries of estates generally, as to proper disposition of the rents and proceeds of sale of the Illinois real estate belonging to Abraham McPike.   An administrator derives his authority to take and administer the assets of his intestate from the laws of the state in which he is appointed, and these laws of necessity have no extraterritorial sanction. *Naylor's Adm'r v. Moffatt,* 29 Mo. 126; *Cabanne v. Skinker,* 56 Mo. 357; *Scudder v. Ames,* 89 Mo. 522, par. 4; *In re Partnership Est. of*

*Ames & Co.*, 52 Mo. 290; *State ex rel. v. Osborn*, 71 Mo. 86.

The property of every person who dies in this state, whether citizen or stranger, is subject to the course of administration provided by our statutes, and is regarded as in the custody of the law for the benefit of all persons interested. *Bartlett v. Hyde*, 3 Mo. 490. And in this respect our laws are in harmony with the laws of administration and succession of the various states of the Union.

The laws of Illinois were not placed in evidence. In the absence of such evidence it will be presumed the common law is in force in that state, and that the title to Abraham McPike's lands upon his death vested according to the canons of the common law. *Young v. People*, 35 Ill. App. 363; *LeMoyne v. Quimby*, 70 Ill. 399; *Warren v. Lusk*, 16 Mo. 102; *Houghtaling v. Ball*, 19 Mo. 84; *Meyer v. McCabe*, 73 Mo. 236; *Long v. Long*, 79 Mo. 651. At common law the administrator had nothing whatever to do with the real estate of his intestate. It descended to the heirs. Accordingly at the common law, and in those states generally where the common law has been adopted, and only modified to the extent of permitting a sale of the lands to pay debts, it has generally been held, that where an administrator came into the possession of rents from the realty or the proceeds of sale, he was chargeable therefor individually as a trustee or trespasser, but not in his character as administrator. *Newcomb v. Stebbins*, 9 Metc. (Mass.) 540; *Wilson v. Unselt's Adm'r*, 12 Bush (Ky.) 215; *Head v. Sutton*, 31 Kan. 616; *Belcher v. Branch*, 11 R. I. 226; *Walker's Appeal*, 116 Pa. St. 419; *Rodman v. Rodman*, 54 Ind. 444; *Kimball v. Sumner*, 62 Me. 305; *Calyer v. Calyer*, 4 Redf. (N. Y. Sur.) 305; *Gregg v. Currier*, 36 N. H. 200; *Scroggs v. Stevenson*, 100 N. C. 354; *Byrne v. Hume*, 73 Mich. 392.

In this state, however, our statutes require the administrator to inventory the real estate, and under the orders of the probate court he is authorized to lease the real estate, collect the rents, prosecute actions for the recovery of possession, discharge mortgages and other liens, and deliver the property to those entitled thereto, when not needed for the payment of debts. Ch. 1, art. 4, sec. 69; art. 5, secs. 93, 94; art. 7, secs. 129, 130; art. 8, sec. 145, *et seq.*; *Lewis v. Carson*, 93 Mo. 591; *Gamble v. Gibson*, 59 Mo. 592; *Dix v. Morris*, 66 Mo. 514. In this last case, the action was against the sureties on the executor's bond. The condition of the bond was "that he should well and faithfully execute the last will and testament," etc. "It was expressly provided in the will that the executor should have authority to sell all, or any part, of the estate, real or personal." This unquestionably made the real estate assets in his hands, for which he and his sureties were liable.

In *State to use v. Scholl*, 47 Mo. 84, the real-estate interest was merely a leasehold of a saloon, a chattel. The administratrix sold it with the fixtures, and her sureties were liable. In holding an administrator chargeable with rents and the proceeds of sale of real estate, received by him in this state, by color of his office, this court has acted with reference to the duties and powers conferred and enjoined by our administration law.

The underlying principle of these cases so holding is that the receiving of rents and sale of realty are clearly within the scope of a lawful exercise of his authority as administrator under certain circumstances, and if, without an order of court, he assumes to and takes the rents or proceeds of sale by color of his office, at most it is but a wrongful or irregular exercise of a power delegated to him by law, and he is estopped from .

pleading his own failure to perform the conditions precedent to the exercise of the grant. The collection of rents and proceeds of sale of realty are within the scope of his duties as administrator. His sureties are presumed to have executed his bond with the knowledge that the due administration of the estate and the law would cast this upon him. In other words, they contract with reference to just such a contingency, and bind themselves to see that he performs the conditions which would render it lawful to take these moneys as assets, and they are liable, if he really does so take them *as administrator*, but neglects to obtain the sanction of the courts in advance. To this extent there is no difference of opinion in the courts of this state. All agree that the administrator and his sureties are responsible for rents and proceeds of realty, received by him in this state, by color of his authority as administrator. *Lewis v. Carson*, 93 Mo. 587.

But, assuming as we do, that the common law obtains in Illinois, and it being clear that at common law an administrator had nothing to do with real estate, and it being equally well determined and conceded that the statutes of this state have no extraterritorial force, and that the letters of administration granted in Ralls county, Missouri, would not, under any state of case, authorize the administrator to proceed into the state of Illinois, sell real estate there situated or intermeddle with it, in any manner, *by virtue of his office*, if he should go there, and obtain it, it cannot be referable to his position as administrator, nor has he any official responsibility or liability with respect to the moneys so obtained, though chargeable as trustee or trespasser. Woerner's American Law of Administration, sec. 308, note 1, and cases cited. And his sureties cannot be held liable for property acquired or acts done by him in a distinct capacity.

7 American & English Encyclopedia of Law, sec. 6, pp. 217, 218, and cases cited; *Gregg v. Currier*, 36 N. H. 200; *McCoy v. Scott*, 2 Rawle, 222; *Gibson v. Farley*, 16 Mass. 280. And, in determining this responsibility to account, this court must keep in mind the effect of charging or crediting the administrator with the proceeds of the real estate in Illinois, on the sureties of the administrator; for this court has invariably held the judgments of the county or probate courts in administration conclusive on the sureties except in cases where fraud or collusion is shown. *State v. Holt*, 27 Mo. 340; *Dix v. Morris*, 66 Mo. 514.

If then the sureties cannot be held for the rents and proceeds of the Illinois real estate, it is because it is not a proper charge against Henry C. McPike *as administrator;* for they are responsible for all sums with which he is legally chargeable as such administrator. But the liability of a surety is always to be measured by his covenant, and the accounting for the proceeds of lands in a foreign state is not within the spirit or letter of his obligation. *Grimes v. Commonwealth*, 4 Litt. (Ky.) 6; *Oldham v. Collins*, 4 J. J. Marsh. 49; *Neely v. Merrit*, 9 Bush, 346; *Speed's Ex'r v. Nelson's Ex'r*, 8 B. Mon. 503. The evidence of the administrator is that he did not receive these rents or proceeds of the real estate in Illinois as administrator. The heirs were necessary parties to the partition case. It certainly seems reasonable that he received it as their attorney in fact or guardian *ad litem*, and not as administrator.

Our conclusion is that the circuit court erred in charging him with said rents that accrued after the death of Abraham McPike, and the proceeds of the sale of one-fourth interest in said mill, and the referee and the circuit court should have sustained the motion to strike out said charges except as to the charge of

$2,920, April 20, 1875, which we think was properly chargeable against the administrator under his own evidence. His evidence precludes the idea that this was *rent accruing after the death of Abraham McPike,* and he says "he thinks *it was due in some other way than rent.*" "I think it was an account due A. McPike's estate." Being a mere personal debt he had a right to receive it, even in a foreign state, and as he did so it became assets with which he was chargeable. The exception to this last item was properly overruled.

IV. The next charge made by the referee and sustained by the circuit court is the sum of $4,007 as follows:

Pasturing plantation mules.................................... $ 405 00
McPike and Johnson 1-2.................................   2,237 00
Pasturing and feeding 53 young mules........................   1,365 00

$4,007 00

The referee charged no interest on the amount, but the court did.

Both the referee and the learned circuit judge, who tried the case below, were impressed with the unsatisfactory evidence upon which they sustained this charge against the administrator. The referee was aided in reaching his conclusion by adopting this rule, that "in such a case whatever doubts arise must be *prima facie* against the administrator." Whereas the learned circuit judge says: "It is not very plainly seen how, from this evidence, the conclusions have been reached, as to the accounts charged under this debit." "The testimony on the subject seems to be *quite speculative and uncertain.*" "The theory or process by which the respective amounts were (reached) is not stated in the report, but the presumption is that the referee found that the value of the feed and pasturage obtained by the administrator from the lands of the estate was the aggregate stated."

The basis of this charge against the administrator is found in an exception made in writing in the probate court, and is as follows:   The administrator *de bonis non* "also objects because the administrator has not charged himself with the amount of corn and hay, raised on the estate lands in Ralls county, township 55, range 5, and fed to the mules and cattle of said administrator for the individual use and benefit and profit of said administrator and to the injury and loss of said estate, and further that he fails to charge himself with the pasturage of the pasture lands of said estate, which were grazed upon and used by said administrator in fattening his individual stock, for his individual benefit, and to the loss of the estate during the years 1874, 1875, 1876, 1877, 1878, 1879 and 1880, and of the value of $10,000."

From the testimony it appears that Abraham McPike died in January, 1873, and Henry McPike was appointed administrator.   When Abraham died, Mrs. Lucy Vardeman and Jerry B. Vardeman were living on the Vardeman land in her house.   Jerry Vardeman was A. McPike's brother-in-law.

All of A. McPike's children, except his daughter, Miss Ella, who was at school, remained with their grandmother, Mrs. Vardeman.   Their mother was dead.   Mrs. Vardeman had six hundred acres, A. McPike eight hundred to one thousand acres and Jerry two hundred and eighty-nine acres, all adjoining.   In the evidence all the lands of the three are called the "home place."   They were all run under one management.

At various times between 1874 and 1880, Henry McPike sent to this farm mules of his own and of the firm of Johnson & McPike.   These mules were partly pastured, and partly fed with grain, and to some extent with hay.   They were watered and well cared for

by Jerry Vardeman. It is for this feeding and care, that this charge is made.

Henry McPike is quite positive in his testimony that he bought the grain from the tenants on the farms of the three owners, and paid them for their grain, and that he paid Jerry Vardeman for the hay. He does not claim that he paid for the pasturage or for the services rendered to him by Vardeman in feeding and watering. The administrator *de bonis non*, who is a son of A. McPike, admits that his uncle Henry did buy some of the tenants' corn that was fed to the mules; and one-half of the cost of pasturage, feed and value of the care of the mules of Johnson & McPike was paid to Jerry Vardeman for the heirs of A. McPike; and that he, Vardeman, used this money for the support and maintenance of the entire family, Mrs. V., Jerry V. and the heirs, and in the payment of taxes; and that all the other products of the home place, except what was fed to the mules, were used by the family.

Now it is clear that these lands were not rented by order or direction of the probate court. *Prima facie* then, the administrator had nothing to do with these lands unless they should be required to pay debts. His own testimony is unqualified that he never took charge of them as administrator, nor assumed to do so; that he gave Mr. Vardeman friendly advice in the interest of the children because they were his kinsmen. The administrator *de bonis non* is equally clear that it was understood by all the family that *"this home place was excluded from the control of the administrator."* All agree that Jerry Vardeman had absolute management of it, and Jerry Vardeman admits that he never accounted to the administrator for rents or products received from the farm. Johnson paid him one-half for keeping the mules, and he says, Henry asked him what he owed him, and he said nothing. He does

say he made no charge, because he thought the mules belonged to his deceased brother-in-law, but he also says that Henry McPike did not tell him they did.

Giving to all of these witnesses full credence, and imputing to them a desire to tell the truth, and nothing but the truth, which I think this record justifies us in doing, the conclusion is unavoidable that this was simply a private transaction between Henry McPike and McPike & Johnson and Jerry Vardeman. That it lacks the definite business-like arrangement of strangers is true, but that Henry McPike understood that Mrs. Vardeman and Jerry and the children were in the full possession and control of these lands, cannot be disputed on this record. His offer to pay Jerry Vardeman; his assistance in making Johnson pay the money to Jerry instead of collecting it himself; his failure to demand any statement of the rents from Jerry, all point in one direction. As the law did not cast upon him the possession, and he did not by color of his office assume it, and those to whom it lawfully belonged were in the actual possession and reaping the benefit of it, it would be contrary to every principle of justice to hold him and his sureties on the theory of rents received. He owed the heirs and Jerry and Mrs. Vardeman for the pasturage. He offered to pay their agent and manager, and he refused to make any charge. Granting that in a court of conscience he might have gone farther, and paid the heirs for their share of the pasturage, still it was no part of his duty as administrator, and is not the subject of a charge in his accounts. His liability for his individual debts should have been settled in another forum.

As said by Judge Woerner in his American Law of Administration, section 513: "On principle, it would seem to follow from the administrator's liability to the heirs or devisees directly as a wrongdoer or tres-

passer, or as their agent or trustee *dehors* his official *status*, that he is not liable in his official capacity, and, therefore, not chargeable in his administration account with the profits, rents or proceeds of sale of real estate; and it is accordingly held in many states that the probate court has no jurisdiction to try the liability of the executor or administrator in respect of real estate not legally in his charge, and that the sureties of the administrator are not bound for the funds so collected." *Lucy v. Lucy,* 55 N. H. 9; *Head v. Sutton,* 31 Kan. 616; *Calyer v. Calyer,* 4 Redf. (N. Y. Sur.) 305. Certainly when the real estate is not legally in his charge, and he does not assume in fact to manage or control it *by virtue of his office,* and deals in his individual capacity with those who are lawfully in possession, there is no foundation for charging him as administrator, or for the probate court assuming jurisdiction to settle their differences.

It follows that, upon the undisputed facts returned by the referee, this charge cannot be sustained.

It was not a contest as to whether Henry C. McPike had collected rents as administrator, nor whether he was in direct possession of the lands on which these mules were fed as administrator, but whether he had paid what it was worth to pasture, feed and care for his individual and firm mules on lands actually occupied and controlled by the heirs, under an arrangement with their uncle and manager, Mr. Vardeman.

No one can doubt that the crops raised on the home place by Vardeman, Mrs. Vardeman and the heirs belonged to them *individually*. They were not turned over to the administrator to pay debts or liabilities of the estate, but for his individual purposes. To permit *him,* or *the heirs either,* to put this into his administration account and charge his sureties therefor would be unjust and establishing a bad precedent.

The remaining objection to the action of the referee and circuit court is the refusal to allow the administrator interest on moneys advanced by him to the estate. In this respect there was no error.

It was his misfortune, if as indorser or surety he was compelled to pay, in advance of funds of the estate, claims against the estate. When he paid them, he then became the owner of the demand or allowance, and was authorized to retain payment *pro rata* with other claims of their class from funds he might receive, and receive the interest they were bearing. The law will not permit any other rule. It follows then that the judgment of the circuit court is reversed, with directions to that court to allow the administrator the items of $1,246.60, paid July 14, 1873, voucher "C," in his second annual settlement, approved by the probate court and referee, and disallowed by Judge EDWARDS, with interest at the same rate that he is charged on his debits, and to strike from the debits charged against him the sum of $11,070, the amount of rent received on the Alton mill and the proceeds of sale in partition in Illinois of said real estate, and the interest charged on said sum by the court in its accounting with him, and with the further directions to strike from the debits or charges allowed against him the sum of $4,007, charged against him for feeding, caring for and pasturing mules for the administrator, and the firm of Johnson & McPike, and the interest thereon also, and to strike out and disallow all commissions allowed on said items, if any, in stating the accounting.

Otherwise the judgment of the circuit court is approved. The administrator is allowed the costs of this appeal.